**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DION JETTER,** | : | **CIVIL ACTION NO. 1:03-CV-1349** |
| **Plaintiff** | : | **(Judge Conner)** |
| v. | : | |
| **JEFFREY BEARD, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court are defendants' motions for summary judgment (Docs. 62, 66), on the claims of plaintiff Dion Jetter ("Jetter") brought pursuant to 42 U.S.C. § 1983. (Docs. 1, 19). For the following reasons, the motions will be granted.

### I.   Statement of Facts[1]

Jetter, an inmate incarcerated at the State Correctional Institution at Huntingdon ("SCI-Huntingdon"), was placed on disciplinary status effective January 10, 2001, and was housed in the Restrictive Housing Unit ("RHU"), a unit utilized by the Department of Corrections to house inmates who have disciplinary or behavioral problems. (Doc. 73, p. 15).

According to an Extraordinary Occurrence Report[2] dated August 29, 2001, Jetter smeared the contents of his meal tray over the window of his RHU cell door

---

[1] In accordance with the standard or review for a motion for summary judgment, the court will present the facts in the light most favorable to plaintiff. See infra Part II.

[2] When a significant problem or emergency occurs in the prison, an "Extraordinary Occurrence Report" must be completed. (Doc. 66-4, p. 20).

and covered it with tissue paper and the liner from his meal tray.  (Doc. 66-4, p. 20).  Obstructing the correctional officers' view into the cell constituted a violation of prison rules.  Consequently, Jetter was twice directed to remove the materials from the window.  He ignored both directives.

During the course of events, Jetter threatened to hurt himself.  The RHU lieutenant contacted the medical department to report Jetter's threat.  A nurse then spoke with Jetter at his cell and he indicated that he was going to hurt himself with anything in the cell.  (Doc. 73, p. 53).  The nurse contacted defendant Polmueller to inform him of the situation.[3]  (Doc. 73, p. 58).  Based on his prior psychiatric treatment of Jetter, Polmueller concluded that Jetter was not at risk to harm himself such that he needed to be placed in a psychiatric observation cell.[4]  However, he recommended that objects or property with which Jetter could attempt to harm himself, such as razors and cloth, be removed from the cell by the correctional officers.  (Doc. 73, pp. 53, 60-61).  Polmueller did not order that Jetter's cell be stripped.

---

[3] Polmueller was employed as a psychiatrist by Wexford Health Sources, Inc. ("Wexford").  During 2001, Wexford provided all medical and mental health services to inmates at SCI-Huntingdon pursuant to a contract with the Commonwealth of Pennsylvania.  (Doc. 73, p. 58).

[4] Polmueller provided psychiatric services to Jetter at various times between January 2001 and August 30, 2001.  (Doc. 73, p. 60).  Polmueller was aware that Jetter had previously threatened harm to himself but had never done so, and believed that he threatened such harm when he did not get his way.  (Doc. 73, p. 60).

Notably, other than ordering placement in a psychiatric observation cell, Polmueller had no authority regarding cell placement or assignment of inmates at SCI-Huntingdon. (Doc. 73, p. 59). Nor did he have the authority to specify the clothing or property an inmate could have in the RHU. Only correctional employees of the Commonwealth of Pennsylvania Department of Corrections had such authority. (Doc. 73, p. 59).

A cell extraction team was assembled to achieve the removal of Jetter from his cell. (Doc. 73, p. 54). When the team gathered outside the cell, Jetter agreed to be handcuffed and left his cell without the use of force. He was given an immediate medical examination which revealed no physical injuries. He requested to see a psychologist and was informed that Polmueller would see him the following day. He also complained to the nurse that he did not have a blanket or mattress in his cell. It was noted in the medical records that both items were removed from the cell for security reasons as Jetter had used them to block the cell door. (Doc. 73, p. 55).

In Jetter's absence, the cell was cleaned and cleared of all items which could be used to cover the cell door window. Jetter alleges that Polmueller authorized strip cell confinement.[5] According to Jetter, his cell was stripped and he was left there nude and remained nude and without basic necessities for a number of days.

---

[5] Jetter defines strip cell confinement as stripping an inmate of clothing, bedding and other property and leaving him stripped in the cell for an extended period while forcing him to earn back the items by demonstrated good behavior. (Doc. 82, p. 3).

Conversely, defendants contend that he was not left nude, or forced to remain nude in his cell at any time.  (Doc. 66, p. 22).

Defendant Polmueller called on Jetter in his cell on August 30, 2001.  (Docs. 73, p. 61, Doc. 83, p. 5).  Jetter was clothed and the temperature in the cell was tolerable.  (Doc. 73, p. 61).  Jetter denied being suicidal, but requested to be placed on psychiatric observation so that the deputy warden would have to come and talk to him about his complaints.  (Id.).  Polmueller concluded that it was not necessary for him to be placed in a psychiatric observation cell.  This was the last time Polmueller rendered treatment to Jetter.  (Doc. 73, p. 61).

In November 2001, Jetter filed a "petition for review" in the Commonwealth Court of Pennsylvania concerning the above events.  (Doc. 78, p. 4, Doc. 82, p. 9).  Although there is no decision in the record, it appears that this petition was denied.

Thereafter, Jetter filed a grievance concerning the above events *via* the Pennsylvania Department of Corrections Inmate Grievance System which provides inmates access to a formal procedure through which the resolution of problems or other issues of concern arising during the course of confinement may be sought.  (Doc. 66-4, p. 9).   The Pennsylvania Department of Corrections Administrative Directive (DC-ADM) 804 Part VI in effect at the time provided that "[g]rievances must be submitted by an inmate for Initial Review to the Facility Grievance Coordinator within fifteen (15) working days after the events upon which the claims are based."  (Doc. 66-4, p. 10).

Jetter's grievance alleging the August 29, 2001 placement in an RHU strip cell, which was assigned grievance number 35629, was not filed until November 8, 2002. (Doc. 66-4, p. 18). "Because DC-ADM 804 requires prisoners to file a grievance within fifteen working days after the events upon which the claims were based and Jetter filed grievance number 35629 more than one year after the events upon which his claims were based, [the Grievance Coordinator] rejected his grievance as untimely." (Doc. 66-4, p. 5). Jetter does not dispute that the grievance was untimely and it is not clear whether the grievance was pursued any further. Although Jetter represents that he exhausted his administrative remedies through the available procedures, he has not provided any supporting documentation to the court. (Doc. 76, p. 1).

## II.   **Standard of Review**

"Summary judgment serves as a minimal but important hurdle for litigants to overcome before presenting a claim to a jury." Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 314 (M.D. Pa. 2004). Faced with such a motion, the adverse party must produce affirmative evidence, beyond the disputed allegations of the pleadings, in support of the claim. FED. R. CIV. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Corneal v. Jackson Township, 313 F. Supp. 2d 457, 464 (M.D. Pa. 2003), aff'd, 94 Fed. Appx. 76 (3d Cir. 2004). "Such affirmative evidence-- regardless of whether it is direct or circumstantial--must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir.

2001)(quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989). Only if this burden is met can the cause of action proceed. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. V. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see FED. R. CIV. P. 56(c), (e).

### III. Discussion

**A. Motion filed on behalf of defendants Beard, Kyler, Williamson, Patrick, and Harris**

The Prison Litigation Reform Act (PLRA) requires prisoners to present their claims through an administrative grievance process before seeking redress in federal court. The act specifically provides as follow:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a). Prisoners must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through the grievance process. See Porter v. Nussle, 534 U.S. 516, 532 (2002): Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000)(quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998).

The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. Spruill


v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004); see also Nyhuis, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court. Spruill, 372 F.3d at 227-32.

In the instant case, it is clear that Jetter has procedurally defaulted his claim because he failed to file his grievance in a timely fashion.[6] It is undisputed that he filed the grievance more than one year after the events at issue. Moreover, Jetter has failed to produce any record evidence to show his exhaustion of administrative remedies. For these reasons, Jetter has failed to demonstrate compliance with the administrative exhaustion requirement set forth in §1997e(a). Consequently, defendants' motion for summary judgment will be granted.

### B. Motion filed on behalf of defendant Polmueller[7]

#### 1. Eighth Amendment claim

Although the Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, Helling v. McKinney, 509 U.S.

---

[6] Clearly, the filing of a petition for review in the Commonwealth Court of Pennsylvania does not relieve Jetter of his obligation to comply with administrative regulations.

[7] On July 8, 2005, Plaintiff filed a motion (Doc. 84) to strike Polmueller's reply brief and attached exhibit (Doc. 83). He argues that the attached exhibit, which is a copy of medical "Progress Notes, Commonwealth of Pennsylvania, Department of Corrections," is fraudulent because it was not included in the medical records provided to him during the course of the litigation. Review of the document reveals that it is a medical progress note related to Jetter's psychiatric treatment and, according to Polmueller, the document is in fact a part of Jetter's medical records. The motion will therefore be denied.

25, 32, (1993), it does not mandate that prisons be free of discomfort. Hudson v. McMillian, 503 U.S. 1, 9 (1992). "No static test determines whether conditions of confinement are 'cruel and unusual.' These terms must 'draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society.'" Tillery v. Owens, 719 F. Supp. 1256, 1262 (W.D. Pa. 1989)(citing, Rhodes v. Chapman, 452 U.S. 337, 346 (1981)). Conditions that are not cruel and unusual under contemporary standards are constitutional. Rhodes, 452 U.S. at 348, 101 S.Ct. at 2400.

To sustain an Eighth Amendment claim, the inmate must also show that the person or persons responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). Specifically, an inmate must prove that the defendant demonstrated "deliberate indifference" to a serious risk of harm to which the inmate was exposed. Farmer v. Brennan, 511 U.S. 825, 836-37 (1994); see also Ostrander v. Horn, 145 F. Supp. 2d 614, 620 (M.D.Pa. 2001), aff'd, 49 Fed. Appx. 391 (3d Cir. 2002). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. "The question . . . is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" Farmer, 511 U.S. at 843.

Further, the test "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts

will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.'" Little v. Lycoming County, 912 F.Supp. 809, 815 (M.D. Pa) aff'd, 103 F.3d 691 (1996), citing Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979), quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977).

The pertinent facts reveal that there simply is no evidence that Polmueller acted with deliberate indifference to Jetter's basic human needs. On August 29, 2001, Polmueller was advised by a nurse that Jetter threatened to harm himself. Based upon his prior treatment of Jetter, Polmueller reasoned that it was not necessary to see him, but indicated that he would visit with Jetter the following day. Polmueller also concluded that it was not necessary to place him in a psychiatric observation cell. However, as a precaution, he recommended to the correctional officers that they remove items from the cell with which Jetter could attempt to harm himself. He did not recommend that Jetter's cell be stripped. As promised, Polmueller met with Jetter in his cell the following day. At that time, Polmueller was aware, based on his review of the medical records, that Jetter's blanket and mattress had been removed from the cell for security purposes. In addition, contrary to Jetter's allegation that he was left naked in a cold cell, Jetter was clothed and the cell was of a tolerable temperature.

Likewise, there is no evidence that Polmueller exposed Jetter to a sufficiently substantial risk of serious damage to his health. Polmueller's recommendation —that potentially dangerous items be removed from Jetter's cell—was based on his

medical expertise and his experience with Jetter.  The court is compelled to afford considerable latitude to Polmueller's decisions concerning medical diagnosis and treatment.  Further, such a recommendation reveals Polmueller's concern for Jetter's health and welfare.  It is not indicative of deliberate indifference.

Based on the foregoing, defendant's motion for summary judgment on the eighth amendment claim will be granted.

### 2. Fourteenth Amendment claim

Changes in confinement of an inmate will result in a deprivation of "liberty," constituting a potential violation of the Fourteenth Amendment, when they impose "atypical and significant hardship . . . in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 85 (1995); Mitchell v. Horn, 318 F.3d 523, 531 (3d Cir. 2003).  However, a prerequisite for a viable civil rights claim is that the defendant directed, or knew of and acquiesced in, the deprivation of plaintiff's federal rights.  See Monell v. Dep't of Social Servs., 436 U.S. 658, 694-95 (1978); Gay v. Petsock, 917 F.2d 768, 771 (3d Cir. 1990); Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988).  The defendant must have been personally involved in the events or occurrences that underlie the claim.  See Atkinson v. Taylor, 316 F.3d 257, 270-71 (3d Cir. 2003).

Based on Jetter's allegation in the complaint that Polmueller authorized his placement in the RHU cell, it was initially determined that Jetter sufficiently stated a Fourteenth Amendment cause of action against Polmueller.  (Doc. 44).  However, with the expansion of the record, it is clear that Jetter's Fourteenth Amendment

10

claim lacks merit. Jetter has failed to demonstrate that he was subjected to a change in confinement. In January 2001, due to both disciplinary and behavior problems, he was placed on disciplinary status and assigned to a cell in the RHU. He alleges that during the time period in question, Polmueller authorized strip cell confinement. However, the record is completely void of any reference to strip cell confinement. All indications are that Jetter's status was not adjusted and that he remained assigned to the RHU at all times.

Even if Jetter were able to demonstrate that he suffered an atypical and significant hardship due to a change in his confinement, in that he was placed in strip cell confinement, he fails to establish that Polmueller was personally involved in such a change. With the exception of his limited authority to direct that an inmate be placed into a psychiatric observation cell, Polmueller had no authority regarding cell placement or assignment of inmates at SCI-Huntingdon. Nor did he have the authority to specify the clothing or property an inmate could have in the RHU.

Faced with a summary judgment motion, the adverse party must produce affirmative evidence, beyond the disputed allegations of the pleadings, in support of the claim. Jetter has not produced evidence that Polmueller had any involvement in the Department of Corrections' decision to place Jetter on disciplinary status and house him in the RHU, or to assign him to strip cell confinement. Accordingly, Jetter has failed to meet his burden with regard to this claim.

An appropriate order will issue.

      <u>S/ Christopher C. Conner</u>
CHRISTOPHER C. CONNER
United States District Judge

Dated:     November 15, 2005

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DION JETTER,** | : | **CIVIL ACTION NO. 1:03-CV-1349** |
| **Plaintiff** | : | **(Judge Conner)** |
| v. | : | |
| **JEFFREY BEARD, et al.,** | : | |
| **Defendants** | : | |

## **ORDER**

AND NOW, this 15th day of November 2005, upon consideration of the defendants' motion for summary judgment (Docs. 62, 66), it is hereby ORDERED that:

1. Plaintiff's motion to strike (Doc. 84) is DENIED.

2. Defendants' motions for summary judgment (Docs. 62, 66) are GRANTED.

3. The Clerk of Court is directed to enter JUDGMENT in favor of defendants and against plaintiff.

4. Any appeal from this order is DEEMED frivolous and not in good faith. See 28 U.S.C. §1915(a)(3).

5. The Clerk of Court is directed to CLOSE this case.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge